R E C E I V E D

OCT 1 9 2017

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| ERVIN YOUNG, ET AL | CIVIL ACTION NO. 1:14-03030 |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| GREGORY WALLER, ET AL | MAG. JUDGE HORNSBY |

## MEMORANDUM RULING

Before the court is a "Motion for Summary Judgment" (R. #71) wherein defendant, Flames Logistics, Inc. and Tower Ins. Company seek to be dismissed with prejudice from the instant lawsuit pursuant to Federal Rule of Civil Procedure 56.

### STATEMENT OF FACTS

This matter arises out of a motor vehicle accident which occurred on April 25, 2014 involving a 2005 Volvo truck driven by Gregory Waller and a 2004 Chrysler automobile driven by plaintiff, Ashley Dauzat. Ervin Young and his minor children M.Y. and X. Y. were passengers.

On October 18, 2013, Norma Spence, the principal and owner of Defendant, Flames Logistics, Inc. entered into a Volvo Truck Sale Agreement (the "Agreement")[1] on behalf of Flames Logistics to sell the 2005 Volvo tractor to Defendant, Murray's Trucking. Flames Logistics asserts that it did not own, operate or direct the operation of the 2005 Volvo truck involved in the accident, nor did Flames Logistics employ or contract the driver of the Volvo truck involved in the

---

[1] Defendants' exhibit B.

accident. Flames Logistics notes that Plaintiffs named two separate trucking companies as responsible defendants in this lawsuit.

The Agreement entered on October 18, 2013 provided that the final payment of the purchase price was July 18, 2015; the Agreement further required Murray's, who is designated as the "contractor", to maintain liability insurance, DOT tags, DOT titles, DOT licensure and to use the truck for its designed purpose and cover all expenses through the payment terms.[2]

The Motor Vehicle Traffic Crash Report identifies the carrier as Murray's Trucking, the owner, as Norma Spence, and the insurer, as Tower.[3]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[4] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[5] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[6] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the

---

[2] Defendant's exhibit B, R. #71-4.
[3] Defendant's exhibit A, R. #71-3; Tower Ins. Co. of NY has been liquidated and Georgia Insurers Insolvency Pool ("GILA") has stepped into the shoes of Tower pursuant to Georgia law, O.C.G.A. § 33-36-9..
[4] Fed. R. Civ. P. 56(c).
[5] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
[6] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

absence of evidence supporting the non-moving party's claim."[7] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[8] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[9] There is no genuine issue of material fact if, viewing the evidence in the light more favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[10] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.[11] The court will construe all evidence in the light most favorable to the nonmoving party, but will not infer the existence of evidence not presented.[12]

## LAW AND ANALYSIS

In the instant motion, Defendants, Flames Logistics and Tower move to be dismissed because there is no causal connection between Flames Logistics and the accident at issue, and there is no viable legal theory under which Flames Logistics can be held vicariously liable. Defendants allege that the Volvo truck operated by Mr. Waller at the time of the accident was owned by Flames Logistics *prior* to the date of the accident, and that prior to the date of the accident, Flames Logistics had transferred possession and ownership of the truck to Murrays.

---

[7] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).
[8] Anderson, 477 U.S. at 249.
[9] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[10] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
[11] Anderson, 477 U.S. at 249-50.
[12] Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

Defendants further assert that Mr. Waller was not employed, controlled or directed by Flames Logistics at the time of the accident.

Plaintiffs assert that on the date of the accident, Flames Logistics/ Norma Spence was still the owner of the vehicle pursuant to the Agreement, Tower was the liability insurer, and ownership of the truck had not been transferred to Murrays. Plaintiffs argue that the Agreement sounded more in lease than in sale because ownership would not be transferred until the last payment was made, and because the Agreement required Murrays to maintain liability insurance, DOT tags, DOT titles, DOT licensure, and that Murrays was to use the truck for the purpose for which it was designed. In other words, Plaintiffs maintain that Flames Logistics retained ownership until Murrays made the final payment. Plaintiffs remark that because the Uniform Motor Vehicle Crash Report listed Mr. Waller as the driver, Murrays as the carrier, and Norma Spence as the owner, Mr. Waller was apparently driving the truck under the employment of either Flames Logistics or Murrays. Thus, Plaintiffs assert that there is a genuine issue of fact for trial as to whether ownership had transferred to Murrays, and whether Murrays was acting as the agent of Flames Logistics.

Plaintiffs rely on Louisiana Civil Code article 2623 which defines a bilateral promise of sale or a contract to sell as "[a]n agreement whereby one party promises to sell and the other promises to buy a thing at a later time, or upon the happening of a condition, or upon performance of some obligation by either party." Such an agreement gives either party the right to demand specific performance. A contract to sell must set forth the thing and the price, and to meet the formal requirements of the sale it contemplates."

Revised Comment (c) to article 2623 states "[i]n a contract to sell, ownership and risk remain with the vendor, since a contract to sell does not effect a transfer of ownership." Thus, Plaintiffs maintain because a contract to sell was entered into by the parties, ownership remained with Flames Logistics at the time of the accident.[13]

In Hewitt v. Safeway Ins. Co. of Louisiana,[14] the Third Circuit Court of Appeal reversed the trial court's finding that an agreement with payment plans was a contract to sell pursuant to Louisiana Civil Code article 2623. The appellate court determined that based on the parties' actions immediately after execution of the agreement (taking possession of the subject vehicle and using it as their own) that they intended more than just an agreement to sell the vehicle in the future. The defendant insurer argued that the agreement was a conditional sale agreement, and as such, ownership of the vehicle transferred immediately to the purchaser. The Third Circuit agreed.

The transfer of ownership of property in Louisiana takes place "as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid.[15] "Louisiana has declined to recognize the common law concept of conditional sale of movables where the vendor attempts to retain ownership until the purchase price is paid in full."[16] In Haymon v. Holliday, [17] the court explained:

> Accordingly, if the parties have agreed on the thing and the price,
> the sale is complete. The parties cannot validly agree that the seller

---

[13] Citing Rourke v. Cloud, 398 So.2d 57 (La. App. 3 Cir. 1981); Harris v. Olivier's Contractors, 155 So.3d 652 (La. App. 3 Cir. 12/10/14); Hewitt v. Safeway Ins. Co. of Louisiana, 787 So.2d 1182 (La.App. 3 Cir. 6/6/01).
[14] Id.
[15] Louisiana Civil Code article 2456.
[16] Security Ctr. Protection Servs., Inc. v. All-Pro §., Inc., 703 So.2d 806 (La. 4 th Cir. 11/26/97).
[17] 405 So.2d 1304 (La.App. 3 Cir. 1981)(citations omitted).

will retain title to the object until payment of the purchase price, as Louisiana does not recognize the common law conditional sales contract for movable property. The effect of this law is that the seller is divested of ownership as soon as the buyer is unconditionally bound to pay the purchase price, and such contractual attempts to retain title until payment are of no effect.

Moreover, an attempted conditional sale agreement is simply "treated as a credit sale in which ownership of the object of the sale passes at the time the contract is entered into."[18] The parties contemplated that title would be transferred upon compliance with the payment schedule contained in the Agreement. Thus, the court finds that the Agreement was not a lease, nor was it a contract to sell. Ownership passed once the Agreement was executed.

Flames Logistics maintains that Plaintiffs have failed to submit summary judgment evidence to establish that the driver, Mr. Waller was directed and/or controlled by Flames Logistics in order to prove vicarious liability. Flames Logistics submits the affidavit of Noram Spence which establishes that Mr. Waller was not employed, controlled or directed by Flames Logistics at the time of the accident.[19] Plaintiffs rely solely on the Agreement and the Vehicle Crash Report. Plaintiffs have failed to present any summary judgment evidence to create a genuine issue of material fact for trial as to whether Mr. Waller was directed and/or controlled by Flames Logistics; therefore there can be no claim of vicarious liability as to Flames Logistics.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment will be granted dismissing with prejudice Plaintiffs claims against defendants, Flames Logistics Inc. and Tower

---

[18] Succession of Dunham, 408 So.2d 888, 896 (La.1981).
[19] Defendants' exhibit C, R. #71-5.

Insurance Company of New York (due to insolvency, now referred to as Georgia Insurers Insolvency Pool). The Court determines that there is no just reason for delay and will direct entry of final judgment under rule 54(b) of the Federal Rules of Civil Procedure.

**THUS DONE AND SIGNED** in Alexandria, Louisiana on this _19th_ day of October, 2017.

_____
**JAMES T. TRIMBLE, JR.**
**UNITED STATES DISTRICT JUDGE**